# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CHRISTOPHER WILLIAMS,** | ) |
| Plaintiff, | ) |
| v. | ) No. 3:16-cv-01654 |
| **SAMSON PELTIER, et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Christopher Williams seeks relief under 42 U.S.C. § 1983 for excessive force against Samson Peltier, a reserve Montgomery County deputy sheriff; Montgomery County, Tennessee; and Montgomery County Sheriff John Fulson. Before the Court is Sheriff Fulson and Montgomery County's Motion to Dismiss for Failure to State a Claim. (Doc. No. 46). Plaintiff filed a response (Doc. No. 54), and Sheriff Fulson and Montgomery County have filed a reply. (Doc. No. 55). Plaintiff has agreed to the dismissal of Sherriff Fulson in his individual capacity. (Doc. No. 54 at 1). For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.    FACTUAL ALLEGATIONS[1]**

After a fender bender between Williams and Peltier, Williams attempted to move his car off the road, when Peltier fired eight rounds towards Williams. (Doc. No. 1 ¶¶ 16, 25). One shot penetrated Williams' left shoulder and several shots hit his car. (Id. ¶ 27).

At the time of the accident, Peltier was off-duty. His reserve deputy position has duties equivalent to a full-time deputy. (Id. ¶ 70). However, reserve deputies received only limited

---

[1] The Court will discuss only the facts necessary to resolve the pending motion to dismiss. Moreover, the facts in this section are drawn from the Complaint (Doc. No. 1) and accepted as true for purposes of ruling on the motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

training on the use of deadly force, even though they are required to carry a firearm. (Id.). Peltier has a history of "certain emotional disabilities," possibly "combat-related Post Traumatic Stress Disorder" ("PTSD"). (Id. ¶¶ 38 and 40). Williams alleges Montgomery County should have considered Peltier's emotional history when he was hired. (Id. ¶ 43).

## II.     LEGAL STANDARD

To survive dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must plead enough factual allegations that, accepted as true, state a claim to relief that is plausible on its face and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (internal citation and alterations omitted). Dismissal is also appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007).

## III.    ANALYSIS

Montgomery County seeks dismissal because Williams cannot establish municipal liability based upon a custom or policy, or a failure to train or supervise.

"To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Winkler v. Madison Cty., 893 F.3d 887, 890 (6th Cir. 2018) (quoting Shadrick v. Hopkins Cty., 805 F.3d 724, 736 (6th Cir. 2015)). A county is a "person" for purposes

of Section 1983, Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), but can be liable only for its own illegal acts not those of its employees, id.; Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). "[M]unicipalities can be held liable for harms caused by direct actions of the municipalities themselves, harms caused by the implementation of municipal policies or customs, and harms caused by employees for whom the municipality has failed to provide adequate training." Morgan v. Fairfield Cty., Ohio, 903 F.3d 553, 565 (6th Cir. 2018) (citations omitted).

**A. Failure to train or supervise reserve deputies on the use of force**

The County argues that the Complaint is conclusory and fails to allege previous instances of excessive force to plausibly conclude the defendants have liability under a failure to train or supervise theory. (Doc. No. 47 at 14–15). Williams disagrees and relies on a single event failure to train. (Doc. No. 54 at 3). The Court agrees.

Bringing a failure to train or supervise claim against a municipality requires: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [County's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." Brown v. Chapman, 814 F.3d 447, 463 (6th Cir. 2016) (quoting Plinton v. Cty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008)). Deliberate indifference can be shown two ways in the Sixth Circuit. First, it can be shown by repeated complaints of constitutional violations that put the municipality on notice of training deficiencies. Plinton, 540 F.3d at 464. Second, as Williams argues, it can be established when "a single violation of federal rights [is] accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." Id. (quoting Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 409 (1997)).

3

Liability on a single violation looks to whether the "highly predictable consequence that deadly force could be misused in violation of citizens' rights could be deemed so obvious as to reflect deliberate indifference." Harvey v. Campbell Cty., Tenn., 453 F. App'x 557, 567 (6th Cir. 2011) (citing Connick v. Thompson, 131. S. Ct. 1350, 1361 (2011)). "[T]he record must show 'a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" Id. (quoting Hays v. Jefferson Cty., 668 F.2d 869, 874 (6th Cir.1982)).

In Thompson v. City of Lebanon, the Court found an obvious need for training officers in how to apprehend a suspect after vehicular pursuit. No. 3:11–cv–00392, 2014 WL 12677063, at *16 (M.D. Tenn. June 10, 2014). The need was obvious because the pursuit produced an adrenaline rush that could impact how an officer responded to a suspect in pursuit, compared to other situations, yet there was a complete lack of training. Id. at 17. Additionally, in Brown v. Chapman, the Sixth Circuit allowed a case to proceed on a municipal liability based on a single act theory for the failure to train officers on proper taser gun use. The Brown Court reasoned that "the consequences of this inadequate training—that officers would discharge their tasers at suspects' chests—were foreseeable." 814 F.3d at 464.

Here, Williams has a plausible claim against Montgomery County. The use of force is a quintessential law enforcement duty reasonably expected and needed of a county deputy sheriff. Williams alleges the training was inadequate. Id. Specifically, he alleges that Montgomery County reserve deputy sheriffs are not properly trained on using force, because the County provides "them with only limited training in the use of deadly force and alternatives to such while expecting them to perform duties equivalent to full-time officers." This limited training could be reckless or grossly negligent. (Doc. No. 1 ¶ 70); See Harvey, 453 F. App'x at 567. Without proper training on

4

when and how to use force, misuse by reserve deputies is not only foreseeable but expected, especially under unanticipated circumstances. Plinton, 540 F.3d at 464. Williams has alleged facts that reserve deputies not trained in the appropriate use of force predictably could violate citizens' rights. The Complaint states a plausible claim of deliberate indifference from a single use of excessive force. See Brown, 520 U.S. at 409 ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right."); Brown v. Chapman, 814 F.3d at 464. The motion to dismiss will be denied on the failure to train or supervise claim. Iqbal, 556 U.S. at 678–79.

### B. Custom or policy of not conducting mental health screening in hiring

Montgomery County also challenges Williams' allegation that it has a custom or policy of not screening reserve deputy sheriffs for prior emotional issues when initially hired. Specifically, Montgomery County argues that it was not aware that its hiring procedures were defective and could lead to injuries of citizens like Williams. (Doc. No. 47 at 16–17). Williams responds that a consequence of not checking applicants for emotional issues like PTSD may cause injury to citizens when deputies use deadly force. (Doc. No. 54 at 4).

To attach municipal liability based upon a County's custom or policy, a Section 1983 plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injur[y] [was] incurred due to execution of that policy." Morgan, 903 F.3d at 566 (quoting Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003)). Causation requires "a direct causal link between the municipal action and the deprivation of federal

rights." Brown, 520 U.S. at 404; see Cash v. Hamilton Cty. Dep't of Adult Prob., 388 F.3d 539, 543 (6th Cir. 2004). A municipality's liability based upon an inadequate hiring policy has a heightened causation requirement that "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Brown, 520 U.S. at 412; see Rivera v. Bonner, 952 F.3d 560 (5th Cir. 2017) (applying Brown to an allegation that a supervisor inadequately considered an applicant's background); Doe v. Magoffin Cty. Fiscal Ct., 174 F. App'x 962, 967–68 (6th Cir. 2006) (applying Brown to a negligent hiring claim to conclude that plaintiff could not "demonstrate that any policy or custom of [the municipality] in its hiring practices caused her constitutional injury"); Ruble v. Escola, 898 F. Supp. 2d 956, 980 (N.D. Ohio 2012) (applying Brown to inadequate hiring policy).

A hiring decision also needs to exhibit deliberate indifference to attach municipal liability under Section 1983, with a showing of "proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410. Plaintiff must allege and prove that adequate scrutiny of an officer's background would have produced a "plainly obvious consequence [that] the decision to hire the applicant would be the deprivation of a third party's federally protected right." Id. at 411; see Thompson, 2014 WL 12677063, at *15.

Here, Williams has not alleged facts to support an inference that Montgomery County's hiring policy played "a direct causal link" to the excessive force Peltier allegedly used against him. See Brown, 520 U.S. at 504. The Complaint contains the bare assertion that "veterans with combat-related [PTSD] have an increased propensity for violence" and are not suited for law enforcement. (Doc. No. 1 ¶¶ 40, 43). Williams has failed to plead any additional factual details of how a PTSD diagnosis can directly lead to the use of deadly force, how a past diagnosis disqualifies an applicant, or that Peltier's possible PTSD did in fact cause Williams' injuries. See Iqbal, 556 U.S.

6

at 678–79; Brown, 520 U.S. at 412. Williams has not plausibly alleged that if Montgomery County screened for and discovered Peltier's mental health history prior to hiring him, the injury to Williams would have been avoided. See Brown, 520 U.S. at 412. Williams also has asserted no factual support that excessive force is a plainly obvious consequence of PTSD. He has not alleged any deliberate indifference in the County's hiring of Williams, because his PTSD, if discovered in a background screening, would not have made it plainly obvious that he would go on to use excessive force in a roadside interaction with a citizen. See id. at 410–11 (holding that a previous conviction for assault and battery—which would have been revealed in proper background screening—did not make it "plainly obvious" that a deputy sheriff would use excessive force during a traffic stop). Williams' failure to "nudge" this claim "across the line from conceivable to plausible" requires its dismissal. Lutz, 717 F.3d at 464.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE